CHARLES H. NORTH & another *vs.* MERCHANTS AND MINERS' TRANSPORTATION COMPANY.

Suffolk.    November 10, 1887. — March 3, 1888.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Common Carrier — Bill of Lading — Contract — Breach.*

A carrier, who receives goods under a bill of lading containing instructions to deliver them at the end of its route "to the order" of the consignor "or his assigns," as well as marks and directions indicating a place beyond as their ultimate destination, and who, without giving like instructions, forwards them to that place by intermediate carriers, the last of whom delivers them up to the consignee without requiring him to produce the bill of lading, commits a breach of contract, and is liable for the value of the goods.

CONTRACT to recover the value of certain goods, with a count in tort, for the conversion of the same, alleged to be for the same cause of action. Trial in the Superior Court, before *Pitman*, J., who allowed a bill of exceptions in substance as follows:

The plaintiffs delivered the goods on August 2, 1884, to the defendant, a common carrier by water between Boston and Nor-

---

* See Sears *v.* Choate, *post*, p. 395.

folk, Virginia, and took from it a bill of lading, which recited the reception of the goods, and stated that they were to be transported " to the wharf of the above-mentioned company at N., and there to be delivered to the order of Chas. H. North & Co., or his assigns, if called for by him or them, as in this contract provided, he or they paying freight and charges thereon, and average, if any."

In the margin of the bill of lading, under the printed words " Marks and Numbers," were written the following:

"⟨◇ S⟩ Windsor, N. C.,
            Care Agent, Portsmouth, Va."

Across the face of the bill of lading the following words were written : " Notify M. E. Skirven, Windsor, N. C."

From Norfolk the usual and only practicable route for merchandise destined for Windsor, North Carolina, was by Lawson's Express from the wharf of the defendant at Norfolk to the Seaboard Railroad, at Portsmouth, Virginia, thence to Plymouth, North Carolina, and thence by steamer on the river Cashia to Windsor, these several connecting lines being independent of each other. The goods arrived and were landed on the wharf of the defendant at Norfolk, on or about August 4, 1884, and were then delivered by it to Lawson's Express, with the following instructions only, as contained in his receipt :

" For $\begin{array}{c}\text{order}\\\text{notify}\end{array}$ M. E. Skirven, Windsor, N. C."

Lawson's Express delivered the goods to the Seaboard Railroad, and gave to it the same instructions. The defendant collected its charge for carrying the goods of Lawson's Express, which collected that sum and its own charge in addition, of the Seaboard Railroad, on delivery of the goods. The goods arrived safely at Windsor, and were there delivered to Skirven by the last carrier in the line, without requiring him to produce the bill of lading. On or about August 2, 1884, the plaintiffs indorsed the bill of lading in blank, and sent it, attached to the receipted bill for the goods, by the Adams Express Company to Windsor, directing it to present the bill to Skirven for payment, and, upon receiving payment thereof, to deliver to him the receipted bill and the bill of lading. Subsequently, the Adams Express Company returned the receipted bill and the bill of lading to the

plaintiffs, and informed them that they had presented the bill to Skirven, who had refused to pay it.

The agent of the defendant, who had charge of its business in Boston, testified *de bene*, under objection, that the defendant had been engaged for many years in carrying merchandise from Boston to Norfolk, including merchandise marked for points beyond Norfolk; that it was the general custom of the defendant line, and of other steamship lines and railroad companies in Boston and New York, when they received merchandise for transportation marked for points beyond the ends of their lines, to forward the same from the end of their lines by connecting lines to its destination, in all cases where bills of lading or receipts were issued similar to the one in question; but that, so far as he knew, the plaintiffs had no knowledge of this custom.

The evidence for the plaintiffs was, that they had no such knowledge; that this was the only order ever received from Skirven, and that their understanding of the contract was that the goods were to be held at Norfolk until Skirven paid for them, and presented the bill of lading to the defendant, properly indorsed.

The defendant requested the judge to instruct the jury that the duty of the defendant was only to transport the goods to Norfolk as a common carrier, and to forward them from that point to Windsor, North Carolina; that if the defendant delivered the goods to the connecting carrier at Norfolk, in good order and condition, with proper instructions in regard to forwarding and delivering the same, it was not liable to the plaintiffs in this action; and that upon the evidence the plaintiffs were not entitled to recover.    But the judge refused so to instruct the jury, and instructed them that, upon the evidence, the plaintiffs were entitled to a verdict as a matter of law.    The jury returned a verdict for the plaintiffs, and the defendant alleged exceptions.

*R. Stone*, for the defendant.    The law is well settled in this Commonwealth, that a corporation established for the transportation of goods for hire between certain points, and receiving goods directed to a more distant place, is not responsible beyond the end of its own line as a common carrier, but only as a forwarder, unless it makes a positive agreement extending its liability. *Nutting* v. *Connecticut Railroad*, 1 Gray, 502. *Judson* v.

*Western Railroad*, 4 Allen, 520.    *Darling* v. *Boston & Worcester Railroad*, 11 Allen, 295.    *Burroughs* v. *Norwich & Worcester Railroad*, 100 Mass. 26.    *Washburn* v. *Providence & Worcester Railroad*, 113 Mass. 490.    And the same rule is adopted in most of the States.    *Myrick* v. *Michigan Central Railroad*, 107 U. S. 102.    The case of *Simkins* v. *Norwich & New London Steamboat Co.* 11 Cush. 102, was similar to the present case.

The purchaser, having got possession of the goods, refused to pay for them, and the plaintiffs now seek to collect the bill of the defendant, upon the theory that the defendant violated the contract in forwarding the goods beyond Norfolk, and that it should have retained possession of them there until the bill of lading was presented to it properly indorsed.    The presiding judge at the time seems to have been led to adopt this construction by the words in the bill of lading, "there to be delivered." In so doing he failed to give due weight to the marks on the goods, and to the direction to "Notify M. E. Skirven, Windsor, N. C.," both of which were in writing, while the words just quoted were printed in the blank bill of lading.    If there is any repugnancy between the two, the printed should yield to the written words.    A delivery of goods to a carrier for transportation, marked and directed to a distant place, has been held to show that the goods were intended to be transported to that place.    *Darling* v. *Boston & Worcester Railroad*, 11 Allen, 295, and cases *ubi supra*.    Why inform the carrier that the goods are to be transported to Windsor, North Carolina, if the carriage is to end at Norfolk?    Why mark the goods, "Care Agent, Portsmouth, Va.," unless the carrier is to forward them by way of Portsmouth?

*W. H. H. Emmons*, for the plaintiffs.

FIELD, J.    The contract of the defendant was to transport the goods by steamship from Boston to its wharf at Norfolk, Virginia, and there deliver them to the order of the plaintiffs, if they were called for by them, and if they paid the freight and charges thereon.    The marks on the margin of the bill of lading of "Windsor, N. C., Care Agent, Portsmouth, Va.," as well as the directions written across the bill to "Notify M. E. Skirven, Windsor, N. C.," indicated the intention of the plaintiffs that the goods were to be sent from Norfolk to Windsor; but they

did not indicate that the goods were to be delivered at Windsor to any person who did not have an order from the plaintiffs to receive them. The defendant made no contract to forward the goods beyond Norfolk, unless such a contract is to be implied from these marks and directions. As the contract is express that the goods shall be delivered at Norfolk to the order of the plaintiffs, a contract on the part of the defendant to forward the goods beyond Norfolk cannot be implied from marks and directions which indicate that Windsor was intended by the plaintiffs to be the ultimate destination of the goods. But if these marks and directions could be held to give authority to the defendant to send the goods forward by the usual route to Windsor, and if the defendant undertook to do this, it should have forwarded them with proper instructions. Although Skirven was to be notified of the arrival of the goods, yet it is plain from the contract of the defendant that the goods were ultimately to be delivered to the plaintiffs or their order, and the neglect of the defendant to give this instruction to the carrier to whom it delivered the goods at Norfolk for transportation to Windsor, was a breach of the duty which it assumed when it forwarded the goods. The plaintiffs have lost the value of the goods by the breach of the contract, or of this duty, by the defendant.

We infer from the exceptions that the facts therein recited were undisputed ; if so, the instructions were correct. *Northern Railroad* v. *Fitchburg Railroad,* 6 Allen, 254. *Claflin* v. *Boston & Lowell Railroad,* 7 Allen, 341. *Darling* v. *Boston & Worcester Railroad,* 11 Allen, 295. *Hall* v. *Boston & Worcester Railroad,* 14 Allen, 439. *Libby* v. *Ingalls,* 124 Mass. 503. *Forbes* v. *Boston & Lowell Railroad,* 133 Mass. 154. *Johnson* v. *New York Central Railroad,* 33 N. Y. 610. *Little Miami Railroad* v. *Washburn,* 22 Ohio St. 324.          *Exceptions overruled.*