THE CHICAGO AND SOUTHEASTERN RAILWAY COMPANY
v. FIFTH NATIONAL BANK.

[No. 3,279.    Filed Jan. 4, 1901.    Rehearing denied April 26, 1901.]

CARRIERS.—*Shipping Goods to Party Other Than Consignee.—Liability.*—Failure to give notice of loss as provided by bill of lading, will not preclude a right of action for the loss, where the loss was occasioned by the initial carrier billing the goods direct to a party other than the consignee, whereby the goods were lost to plaintiff, since the carrier lost the benefit of exceptions from liability by billing the goods to a party other than the consignee without authority to do so.    *pp. 603-606.*

SAME.—*Violation of Contract of Shipment.—Exemption from Liability.—Connecting Carrier.*—A stipulation in a contract of shipment that the receiving carrier shall not be liable for loss or damage to property after it has been delivered to a connecting carrier is not available to the initial carrier, where it has violated the contract of shipment by billing the goods to a party other than the consignee, and thereby causing plaintiff's loss of the goods.    *pp. 606, 607.*

SAME.—*Violation of Shipping Contract.—Delivering Goods Without Production of Bill of Lading.*—Failure to write the word "order" in the column of the way-bill containing the names of the consignee and the destination will not authorize the carrier to deliver the goods without the production of the bill of lading, where the carrier billed the goods to a party other than the consignee named in the bill of lading, thereby causing the loss of the goods to plaintiff.    *p. 607.*

TRIAL.—*Setting Aside Submission of Case and Hearing Additional Evidence.*—The court in its discretion may set aside the submission of a cause and hear additional evidence, and such action will not be reviewable in the absence of abuse of discretion.    *p. 608.*

APPEAL AND ERROR.—*Weight of Evidence.—Judgment.*—The appellate tribunal will not disturb a judgment on the weight of the evidence, where there is ample evidence to support the material facts found.    *pp. 608, 609.*

SAME.—*Waiver.—Failure to Discuss Error.*—Failure to discuss an assignment of error by the party assigning it constitutes a waiver thereof.    *p. 609.*

SAME.—*Waiver.—Failure to Refer to the Page and Line of Record.*—Under Appellate Court rule twenty-six, requiring that in discussions arising on the admission or exclusion of evidence, reference shall be made to the evidence by page and line of the record where it can be found, the failure to point out the objectionable evidence as required by the rule amounts to a waiver of appellant's right to have it considered.    *p. 609.*

From the Madison Superior Court. *Affirmed.*

*W. R. Crawford, U. C. Stover* and *W. H. Najdowski,* for appellant.

*F. A. Walker* and *F. P. Foster,* for appellee.

WILEY, J.—Appellee was plaintiff and sued appellant for failure to deliver two carloads of hay shipped under written contracts to Cincinnati, Ohio. The complaint was in two paragraphs, to which a demurrer was addressed and overruled. The first paragraph of complaint avers that January 17, 1898, appellant received at one of its stations on the line of its road a car of hay from Budd & Plunkett of the value of $80, for shipment to Cincinnati, Ohio; that it agreed to haul the same to said destination, if on its line of road, otherwise to deliver it to another carrier on the route to its destination; that, pursuant to its contract, it hauled said hay to Anderson, Indiana, and there delivered it to the Pittsburgh, Cincinnati, Chicago and St. Louis Railway Company; that appellant issued to the owners and shippers of said hay a bill of lading covering said car of hay, a copy of which is filed with the first paragraph of complaint as an exhibit. It is then averred that Budd & Plunkett indorsed and delivered said bill of lading to the J. N. Woolscroft Grain Company; that on January 18, 1898, said last named company indorsed and delivered said bill of lading to appellee, which said indorsements are made exhibits to the complaint; that said indorsement and delivery were made to appellee as collateral security in consideration of a loan of $75 then made by appellee to said grain company, evidenced by a demand note of said date. It is also alleged that appellant's agent at Max, Indiana, where said hay was received for shipment, in violation of the terms of said bill of lading, billed said car direct to the said J. N. Woolscroft Grain Company; that appellant delivered said hay at Anderson to said connecting line on or about January 21, 1898, which connecting line carried the same to its destination, where within a few days after its

arrival at Cincinnati the same was turned over by the agent of said connecting line to the J. N. Woolscroft Grain Company; that said hay was so delivered to said grain company without the production of and without any notice or knowledge that appellant had issued a bill of lading covering the shipment; that appellee has held said bill of lading as collateral security ever since it was indorsed to it, and still holds it, and never at any time or in anywise authorized the appellant or the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company to deliver or turn over said hay without production of the bill of lading. That on or about the 25th of January, 1898, said grain company sold and disposed of said hay, and put the same beyond the reach of appellee. That on or about April 23, 1898, said grain company failed, became, and ever since has remained insolvent,. rendering appellee's said. debt uncollectible and worthless. That immediately after such failure, appellee presented its claim to the assignee of said grain company for payment, which was refused; that said sum nor any part thereof has ever been paid; that appellee has not received from appellant or any one else any compensation on account of said loss, although demand therefor has been made upon appellant and its agent. It is further alleged that by the carelessness and negligence of appellant and its agent in billing and consigning said car direct as aforesaid, when it had issued to the shipper its bill of lading, and by reason of all the facts aforesaid it has brought upon appellee the loss of said sum so loaned upon the security of said bill of lading in the sum of $85, for which it demands judgment.

The second paragraph of the complaint is identical to the first except it rests upon a subsequent shipment of a car of hay billed as the first and indorsed as the first. There is this difference, however, the second car was delivered to the Cleveland, Cincinnati, Chicago & St. Louis Railway Company at Anderson, and by it carried to Cincinnati. In each of said bills of lading, under the column marked "Con-

signees and Destination", appears the following: "Budd & Plunkett. Notify Woolscroft Grain Co., Cincinnati, Ohio." On the back of the first bill of lading, the following indorsement appears: "Budd & Plunkett, $50. The J. N. Woolscroft Grain Co. W. A. Campbell, Treasurer." On the back of the second bill of lading the following indorsement appears: "Budd & Plunkett, $50. The J. N. Woolscroft Grain Co. Per W. A. Campbell, Tr." In the first bill of lading in the column in which are written the names of the consignees and the place of destination, and immediately above the names of the consignees, is the word "Order".

A demurrer was addressed to each paragraph of the complaint and overruled; answer and reply. The trial was had by the court, and upon proper request a special finding of facts was made and conclusions of law stated thereon. Judgment for appellee in the sum of $131.95. Appellant excepted to the conclusions of law, moved for a new trial and in arrest of judgment, which motions were overruled.

The errors assigned are (1) overruling the demurrers to each paragraph of complaint; (2) setting aside the submission of the cause and hearing additional testimony; (3) that the court erred in its conclusions of law; (4) overruling motion for a new trial, and (5) overruling the motion in arrest of judgment.

The first objection urged to the complaint is that it fails to aver that notice of loss was given as required by paragraph three of the bill of lading. Paragraph three provides that claims for loss or damage must be made in writing to the agent at point of delivery promptly after arrival of the property, and that if delayed for more than thirty days, or after due time for delivery thereof, no carrier shall be liable. The general rule is that this condition in a bill of lading is a reasonable one, and that the giving of such notice is a condition precedent to any recovery upon the contract, and that a performance of such condition must be averred in

the complaint and proved on the trial. *Louisville, etc., R. Co.* v. *Widman,* 10 Ind. App. 92; *United States Ex. Co.* v. *Harris,* 51 Ind. 127; *Home Ins. Co.* v. *Duke,* 43 Ind. 418; *Sprague* v. *Missouri, etc., R. Co.,* 23 Am. & Eng. R. Cas. 684; *Texas, etc., R. Co.* v. *Morris,* 16 Am. & Eng. R. Cas. 259; *Baltimore, etc., R. Co.* v. *Ragsdale,* 14 Ind. App. 406; *Chicago, etc., R. Co.* v. *Simms,* 18 Ill. App. 68.

The cases so holding are based upon loss or damage *in transitu,* and do not relate to cases where there has been a conversion. The complaint before us, if it is to be held good, must be upon the theory that appellant, after issuing a bill of lading to Budd & Plunkett, consignees, negligently and wrongfully issued a shipping or way-bill in the name of the J. N. Woolscroft Grain Company, thus indicating or designating them as the consignees, and in failing to notify the connecting companies that the hay was covered by a bill of lading and consigned to Budd & Plunkett.

The act of the appellant which caused the loss to the appellee was a tortious one, and amounted .in law to a conversion. The act occasioning the loss, or what may be termed the proximate cause of the loss, was in issuing the way-bill in the name of and shipping the hay directly to the Woolscroft Grain Company, and in delivering the same so billed to the connecting and forwarding companies, without any bills of lading, and without information to the forwarding companies that such bill of lading had been issued to Budd & Plunkett. It was the duty of appellant to ship the hay in accordance with the terms of the bill of lading. By the bills of lading Budd & Plunkett were named and made the consignees, while by the shipping or way-bills, the Woolscroft Grain Company was named and made the consignee. The forwarding companies received from appellant the cars of hay so billed, and by such way-bills they were instructed and authorized to deliver the hay to the grain company therein named. That the delivery of goods by a common carrier to a third or wrong person amounts to a conver-

sion is so declared by many authorities. *Merchants, etc., Co.* v. *Merriam,* 111 Ind. 5; *Gibbons* v. *Farwell,* 63 Mich. 344; *Forbes* v. *Boston, etc., R. Co.,* 133 Mass. 154; *North* v. *Merchants, etc., Co.,* 146 Mass. 315, 15 N. E. 779; *Maghee* v. *Camden, etc., R. Co.,* 45 N. Y. 514; *Johnson* v. *New York, etc., R. Co.,* 33 N. Y. 610; Elliott on Railroads, Vol. 4, §§1490, 1526; *Philadelphia, etc., R. Co.* v. *Beck,* 125 Pa. St. 620, 17 Atl. 505.

In *Maghee* v. *Camden, etc., R. Co., supra,* the court said: "When a carrier accepts goods to be carried with a direction on the part of the owner, to carry them in a particular way, or by a specified route, he is bound to obey such direction; and if he attempts to perform his contract in a manner different from his undertaking, he becomes an insurer, and cannot avail himself of any exceptions in the contract." Again in the same case, the court said: "If it could be shown, in such case, that the loss must certainly have occurred from the same cause, if there had been no default, misconduct or deviation, the carrier would be excused; but the burden of proof of this fact would be upon the carrier."

In the case at bar appellant contracted with Budd & Plunkett to ship the two cars of hay from Max, Indiana, to Cincinnati, Ohio, and deliver the same to them at the point of destination. It violated its contract by billing the hay direct to the Woolscroft Grain Company, and delivering it to such company. It thus appears that it attempted to perform its contract in a manner different from its undertaking, and by such act the hay was wholly lost to appellee, who became the consignee by assignment of the bill of lading. Appellant has not made any showing that the loss would have been sustained by appellee if it had not made the mistake it did in billing and shipping the hay to the wrong party.

In the case from which we last quoted, the court again said: "Having undertaken to carry the goods in violation of the instructions in the contract, it lost the benefit of the

exceptions from liability." The language is very appropriate to the facts in this case, and we cite it with approval.

Judge Elliott, in his work on Railroads, at §1526, says: "The fact. of the misdelivery of goods is the same as a total failure to deliver them at all, and is deemed a conversion of the property by the carrier. No demand is necessary in such case." We are satisfied, under the authorities, that the notice of loss provided for in paragraph three of the bill of lading was not a condition precedent to appellee's right of action.

The next objection urged to the complaint is that it is shown that the loss occurred on connecting lines, and hence appellant is not liable. It is true a common carrier may limit its liability by contract so that it is only liable for loss or damage to property it contracts to carry until it has duly delivered it to connecting carriers. There is no controversy on this proposition, and there is such limitation in the contracts sued on. We do not think, however, that appellant can shield itself under this limitation, for it is plain from the averments of the complaint that appellant's damages did not arise from a mere failure to perform a duty under the contract of shipment, but from a total disregard of its contractual obligations it entered into by which it shipped the hay in direct violation of the terms of the contract, in that it billed and shipped it direct to the Woolscroft Grain Company. The hay having been shipped contrary to the instructions of the shippers, and in total disregard of the terms of the contract, precludes the application of the rule for which appellant contends. We must look to the proximate cause, the initial wrong of the damage to appellee, and the loss should be traced back through all the intermediate causes to the first dereliction of duty. The first wrong was appellant's, and this led to the injury. Upon the proposition last announced, we cite the following: *Philadelphia, etc., R. Co.* v. *Beck,* 125 Pa. St. 620, 17 Atl. 505; *Little Miami R. Co.* v. *Washburn,* 22 Ohio St. 324; Redfield on Carriers, §186.

Appellant was the initial carrier, and in violation of its contract it billed the hay to a party other than the consignee and delivered the hay to the connecting carriers without any instructions or marks of any kind to indicate to the connecting carriers that bills of lading had been issued, and failed to inform such connecting carriers that they had any duty to perform except to deliver the hay to the grain company as designated by the way-bill. In further support of the proposition, we cite the following authorities: *Hutchings* v. *Ladd,* 16 Mich. 493; *Hinckley* v. *New York, etc., R. Co.,* 56 N. Y. 429; Elliott on Railroads, §§1440, 1444, 1448, 1449. Judge Elliott says: "It is, in general, the duty of the initial carrier to obey the instructions of the shipper * * * and it should also transmit the instructions of the shipper to the connecting carrier." §1440, *supra.*

It is further specially urged that the second paragraph is bad because the word "order" is not written in the column containing the names of the consignee and the destination. By paragraph nine of the bill of lading it is provided that if the word "order" is so written, the surrender of the bill of lading will be required before delivery of the property. Also, that, if any other form of consignment is used, the property may, at the option of the carrier, be delivered without requiring the production of the bill of lading. Under this paragraph of the bill of lading, and as it appears that the word "order" does not appear in the bill of lading, as indicated, the carrier was authorized to deliver the property without a production of the bill of lading. If appellant had billed and shipped the hay according to its contract, i. e., if it had made the way-bill show who the consignees were, as disclosed by the bill of lading, there would be some merit in this position, but it is not defensible under the facts alleged. It has also been held that where freight has been shipped unaccompanied by a bill of lading, but by a "manifest" only, delivery may be made without producing the

bill of lading. *Bank* v. *Philadelphia, etc., R. Co.,* 163 Pa. St. 467, 30 Atl. 228. The court properly overruled the demurrers to the complaint.

The second specification of the assignment of errors is that "The court erred in setting aside the submission of the cause below and in hearing further evidence." If this is a proper assignment of error, and we doubt if it is, there was no error in the action of the court in hearing additional evidence. Though the evidence was closed, the trial was not ended. Pending the trial, which did not end till the court had made its special finding of facts and stated its conclusions of law thereon, we have no doubt but that the court had discretionary power to hear additional evidence. In the absence of an abuse of such discretion, this court will not review the action of the court in such case. The additional evidence was competent and pertinent to the issues. The court did not abuse its discretion. See *Noblesville, etc., Co.* v. *Teter,* 1 Ind. App. 322; *Stipp* v. *Claman,* 123 Ind. 532.

By the third assignment of error, appellant challenges the conclusions of law stated by the court on the special findings of fact. The special findings of fact are very voluminous, and we do not think it necessary to set them out, even in the abstract. It is sufficient to say that the court found every material fact that was relied upon by appellee as averred in the complaint in its favor. To take up these several facts in their order and discuss them would simply be a repetition of what has been said upon the sufficiency of the complaint. The facts found support the complaint, and the conclusions of law stated thereon are in complete harmony with the facts.

The second and third reasons for a new trial are that the decision of the court is contrary to law, and not sustained by sufficient evidence. The determination of these questions thus raised involves a consideration and weighing of the evidence. There is ample evidence to support every

material fact found, and, this being the case, we cannot disturb the judgment on the evidence.

The fifth, sixth, seventh, eighth, ninth, tenth, twelfth, and thirteenth reasons for a new trial aver error in admitting certain evidence over appellant's objections. The eleventh reason for a new trial was alleged error of the court in refusing to admit certain evidence. Appellant has waived its right to have the questions thus raised examined and decided for two reasons: (1) By failing to discuss some of them, and (2) by failing in the discussion of the others to refer us to the record where the alleged objectionable evidence may be found. There has been a total disregard of rule twenty-six of this court by counsel for appellant, which requires that in discussing questions arising on the admission or exclusion of evidence counsel shall refer to such particular evidence and specify by pages and lines the part of the record where it appears. For such omission, it has often been held that the court will not examine the record to find such evidence, and a failure to point it out is a waiver of the party's right to have it considered. This is so familiar a rule that we do not deem it necessary to cite authorities in its support.

We do not find any reversible error. Judgment affirmed.