# Supreme Court of Judicature

OF THE

# STATE OF INDIANA,

AT INDIANAPOLIS, NOVEMBER TERM, 1893, IN THE SEVENTY-
EIGHTH YEAR OF THE STATE.

———————◆———————

No. 16,847.

### GOODBAR ET AL. *v.* LIDIKEY ET AL.

INSTRUCTIONS TO JURY.—*Irrelevancy.*—*Correct Abstract Statements of Law.*—It is not error to refuse to give instructions which state correct abstract propositions of law, but which are inapplicable to the issues.

WILL.—*Action to Set Aside.*—*Mental Incapacity.*—*Evidence.*—*Devise.*—*Title.*—In an action to set aside a will, alleging mental incapacity of the testator, involving no title to land, evidence that the testator devised land to which he, at the time, had no title, is admissible for the purpose of showing the condition of mind of the testator at the time he executed his will, and for no other purpose.

SAME. —*Undue Influence.*—*Physical and Mental Superiority.*—*Intimate and Confidential Relations.*—*Presumption.*—When, by physical or mental superiority, one obtains an advantage in a transaction over another who is enfeebled in mind and body, or weakened by disease or old age, the person obtaining such advantage will be required to show that the transaction was a fair one, provided he was present and actively concerned in bringing about the result complained of; but the presumption in favor of the validity of a will should be increased rather than diminished from the circumstance that a be-

quest was made to one with whom the testator had maintained intimate and confidential relations during life.

SAME.—*Instruction to Jury.*—*Mental Capacity.*—*Declarations.*—*Conclusions.*—*Evidence.*—In an action contesting the validity of a will, the jury was instructed to consider numerous matters relating thereto, including declarations made by the testator some time previous to the making of his will, showing that he designed to make the will as it stands. Such instruction was correct as affecting the capacity of the testator to make a valid will. And the mere fact that the jury are told that if they find certain evidence to be established, certain conclusions may be drawn therefrom, does not unduly emphasize such evidence.

SAME.—*Undue Influence.*—*Evidence.*—*Rebuttal.*—*Declarations.*— Mere declarations of a testator, not made in connection with the execution of a will, are not admissible for the purpose of showing undue influence; but declarations made before the execution of the will, when the will is made in conformity with such declarations, are admissible by way of rebuttal of proof of undue influence.

SAME.— *Undue Influence.*—*Relations of Friendship and Affection.*—Undue influence is not proved by disclosing relations of friendship and affection between the testator and devisee, nor by showing kindly offices and proper conduct on the part of the devisee.

From the Montgomery Circuit Court.

*T. E. Ballard* and *E. E. Ballard,* for appellants.

*P. S. Kennedy, S. C. Kennedy, B. Crane* and *A. B. Anderson,* for appellees.

HOWARD, C. J.—This was an action brought by appellants to set aside the will of John N. Goodbar, alleging unsoundness of mind, undue execution, fraud, and duress.

There was an answer in general denial, trial by a jury, and judgment for appellees, sustaining the will.

The overruling of appellants' motion for a new trial is assigned as error.

Under the assignment of error, counsel for appellants complain of the action of the court in refusing to give certain instructions to the jury, as requested by appellants, and also in giving certain other instructions over the objections of appellants.

By one item of his will, the testator had devised to his sister, Catharine Hostetter, certain real estate. Evidence was introduced on the trial, by appellants, to show that at the time of making his will the testator had no title to the real estate so devised. Against this evidence, appellees introduced the record of the proceedings and judgment in a foreclosure suit against the owner of said land, and the assignment of said judgment to the testator. In rebuttal, the appellants read in evidence a reassignment of the judgment made afterwards by the testator to the said Catharine Hostetter.

As applicable to the evidence thus introduced, the appellants asked the court to give to the jury the following instructions:

"5. The judgment of foreclosure which has been read in evidence can not be considered by you for the purpose of establishing title in the testator to the land described in such judgment.

"6. A devise of land does not give to the devisee any interest in a judgment of foreclosure rendered against the person owning such land.

"7. If you are satisfied, from the evidence, that the testator, John N. Goodbar, signed and executed the written instrument read in evidence, bearing date of April 20, 1891, then I instruct you that such instrument has the effect to transfer to Catharine Hostetter all the right, title and interest which John N. Goodbar had to the judgment of foreclosure described in such instrument."

We think the court properly refused to give these instructions. In so far as the instructions are correct abstract statements of law, they are not applicable to the issues before the court.

The case of *Zenor* v. *Johnson,* 107 Ind. 69, relied upon by counsel, was one involving the ownership of property, and it was correctly held in that case that the court

should have construed the written contracts upon which
the title to the property depended.     Here, however, there
is no question of trial of title; the issue before the court
was as to the capacity of the testator to make a valid will.
The evidence offered as to the title to the Hostetter land
was competent only in so far as it went to show the
soundness or unsoundness of the mind of the testator;
and the court, in the instructions given the jury on this
evidence, properly charged them that it was to be con-
sidered so far as it illustrated the condition of mind of
John N. Goodbar as to soundness or unsoundness at the
time he executed the will in suit, and not otherwise.

On the issue of undue influence, appellants asked the
court to give the following instruction:

"Where the devisee in a will sustains a confidential
relation to the testator at the time of the alleged execu-
tion of the will, and where the testator is being cared for
by, and is under the protection of, such devisee, and there
is in the will a devise of a large amount of property to
the devisee sustaining such confidential relation, and if
it be shown that, at the time of the alleged execution of
the will, the testator's mind was enfeebled by age and
disease, even though not to the extent of producing
mental unsoundness, then it will devolve upon the de-
visee to show affirmatively that the will was a free and
voluntary act of the testator, and without any improper
influence on the part of the devisee."

We think that the rule asked for in this instruction is
one rather applicable to contracts or gifts *inter vivos* than
to testamentary devises.     But even as to contracts, the
instruction seems too broad.     It assumes that there was
between the testator and one of the devisees a fiduciary
relation, as of trustee and beneficiary, principal and
agent, attorney and client, guardian and ward, parent

and child, physician and patient, pastor and parishioner.

It would, besides, be necessary, in order to establish the fact of undue influence even as to contracts, that the one claimed to have exerted the influence should be shown to have had some advantage of superiority or knowledge over the other, and that such superior influence was exerted in the transaction complained of. In this case, the transaction complained of, the execution of the will, is not shown to have been in any way participated in by the devisee. Certainly one can not be called upon to prove that a transaction with which he had nothing to do was a fair one.

It is undoubtedly the law that when, by physical or mental superiority, one obtains an advantage in a transaction over another who is enfeebled in mind and body, or by disease or old age, the person obtaining such advantage will be required to show that the transaction was a fair one. But such a rule can apply only to one who was present and actively concerned in bringing about the result complained of.

In addition, the rule which obtains as to transactions between the living, must be greatly modified when it comes to testamentary devises. If the will is not made with the active participation of the devisee, then the rule sought to be applied in the instruction can not obtain in any degree. Surely, one ought not to be incapable of taking a devise simply for the reason that he had been a friend of the testator, or had served him faithfully when living. On such a theory a wife or a child might be suspected of having exerted undue influence over a loving and grateful husband or father, merely because he should be found to have remembered them generously in his will, and that even if the will were made with his

lawyer alone, in the privacy of his chamber, as was done in this case.

Indeed, we think that the presumption in favor of the validity of a will should be increased rather than diminished from the circumstance that a bequest was made to one with whom the testator had maintained intimate and confidential relations during life. A will, in fact, is usually made in order to give property to those whom the testator desires to favor. If it were the desire that the property should go in due proportions to those equally related to the testator, then no will would be necessary. The law itself would make such distribution in the most equitable manner possible. This is particularly the case where, as in this case, the testator had neither wife nor children, and his property, if not devised, would go to collateral relations. The real question must be as to the mental soundness of the testator, and whether his mind was in fact unduly influenced in the making of his will; whether it was his will or the will of some one else.

In the *Estate of Brooks,* 54 Cal. 471, it was claimed, as it is in this case, that the devisee, having been a partner of the testator, a presumption of undue influence arose from that relation. The court said: "We think the suspicion of undue influence having been exerted would be much stronger in a case where a testator should give all his property to a stranger than in one where he gives it all to one with whom he was intimately connected socially and in business for a great many years immediately preceding his death." See, also, *Wheeler* v. *Whipple,* 44 N. J. Eq. 141; *Tyson* v. *Tyson, Exr.,* 37 Md. 567; *In re Will of Smith,* 95 N. Y. 516; *Bancroft* v. *Otis,* 8 So. Rep. (Ala.) 286; 1 Redfield Wills, 537, note; Schouler Wills, section 246.

Instruction eight, as given by the court, is objected to, as are also instructions nine and thirteen, for the gen-

eral reason that the court singles out and emphasizes certain evidence. It is proper to give instructions applicable to the issues, if there is also evidence to which they may apply.

Instruction eight draws attention to the condition of mind of the testator, and asks the jury to consider numerous matters relating thereto, including declarations made by the testator for some time previous to the making of his will, showing that he had long designed to make the will as it stands. We think these instructions were correct as affecting the question of capacity to make a valid will. *Conway* v. *Vizzard*, 122 Ind. 266.

We do not think the court unduly emphasized the evidence to which this and the succeeding instructions refer. The jury are told that if they find certain evidence established, certain conclusions may be drawn therefrom; but we do not think there is any suggestion that the facts referred to have been proved. That is left to the jury, as it must be.

Instruction nine relates to evidence given relative to the title to the Hostetter land, and we have already referred to it. It properly informed the jury that whatever they found the facts to be relating to this matter should be considered only so far as it showed the condition of the testator's mind at the date of his will; and this was the only purpose for which that evidence should be considered.

That part of instruction thirteen complained of is as follows: "And as further bearing upon the question of undue influence, if you find that months before the execution of the will, when in good health, and of unquestioned soundness of mind, the testator declared, in the absence of De Pew Hyten, that he intended to do a good part by De Pew Hyten, or pay him well for attentions and kindnesses bestowed, or give him a home; and if

you further find that the bequest to De Pew Hyten is in substantial compliance with such declaration, you should consider this fact in determining whether or not De Pew Hyten used undue influence in procuring the bequest made to him.''

It is well settled that the mere declarations of a testator, not made in connection with the execution of the will, are not admissible for the purpose of showing that the will was procured by undue influence. Such declarations must be treated as hearsay. *Hayes* v. *West,* 37 Ind. 21; *Todd* v. *Fenton,* 66 Ind. 25; *Vanvalkenberg* v. *Vanvalkenberg,* 90 Ind. 433; *Conway* v. *Vizzard, supra.*

But it is quite otherwise when a will is to be defended against an assault by one who claims that it was executed through undue influence. In such case, the declarations of the testator, made before the execution of the will, are admitted by way of rebuttal, to show his intentions as to the disposition of his property. Where the will is made in conformity with the repeated declarations of the testator, it is more likely to have been executed without undue influence than if found contrary to such declarations. *Bundy* v. *McKnight, Exr.,* 48 Ind. 502; *Lamb* v. *Lamb,* 105 Ind. 456; 1 Red. Wills, 568; Schouler Wills, section 243; *Roberts, Exr.,* v. *Trawick,* 17 Ala. 55; *Gardner* v. *Frieze,* 16 R. I. 640.

Instruction twelve, also given by the court, is objected to as tending too strongly to show that a presumption of undue influence does not necessarily arise from social or family relations; as that the testator lived with the devisee, was treated kindly by him, was nursed in sickness, and his wants provided for. From what we have already said in considering the instruction upon the subject of undue influence, requested by appellants, and refused by the court, we do not think this instruction incorrect. It states to the jury, substantially, that undue

influence is not proved by disclosing relations of friendship and affection between the parties, and by showing kindly offices and proper conduct on the part of the devisee.    This was correct.    If unkindly relations were shown towards the testator, and the devisee, notwithstanding his harsh treatment of the testator, should be found to have been favored in the will, then we might much more reasonably suspect undue influence.    To prove undue influence, some conduct must be shown on the part of the devisee by which the freedom of action of the testator was so controlled that the will offered as his can not be considered as his voluntary act or deed.

We have found no error in the record, and the judgment is affirmed.

McCabe, J., took no part in the decision of this case.
Filed Nov. 27, 1893.